**GRAU, Jr., et., Plaintiffs, v. KRAMER, Defendant.**

Common Pleas Court, Hamilton County.

No. A-122249. Decided March 10, 1952.

Matthews & Matthews, Cincinnati, for plaintiffs.

G. H. Hermerding, Robert F. Ahrens, Cincinnati, for defendant.

**OPINION**

By RENNER, J.

This action was brought by Samuel W. Grau, Jr., and Sylvia Grau, as plaintiffs, against Lillian Kramer for damages sustained by them as the result of alleged false and fraudulent representations by the defendant to plaintiffs concerning the location and kind of sewer system servicing the residence of the defendant on the west side of Colerain Pike, Groesbeck, Hamilton County, Ohio, during the negotiations prior to the purchase thereof by plaintiffs.

It will be recalled at the conclusion of the trial that the court discussed with counsel the question of the measure of

damages recoverable in an action such as this one and granted the request of counsel to submit briefs on this issue.

At that time the court had reached the conclusion that counsel for plaintiffs had, in view of all of the testimony offered in the case, established the right to recover against the defendant but the court, as stated, was in doubt as to the measure of damages.

Reviewing briefly the evidence in the case, from which the court then concluded and still is of the opinion that plaintiffs were entitled to damages, the facts upon which the court reached this conclusion are as follows:

Plaintiffs with one Carl H. Tansing, a real estate broker representing the defendants, visited the property of defendant shortly before July 13, 1948. The visit was made as prospective purchasers and later on the same day the plaintiffs with the father and mother of the plaintiff, Samuel W. Grau, made another visit to the property; that on the first visit plaintiffs inquired of the broker as to the sewer and drainage system for the property and he stated to them that the community of Groesbeck in which the property was situated had no sewage system and that defendant's property drained into a septic tank. A short time later on this first visit the question was put to defendant by plaintiffs as to sewer facilities. the boundaries of the lot, etc., at which time defendant represented to them that the property was provided with a septic tank located to the front of the house at the same time pointing in that general direction from the front porch on which they were standing; that on the second visit that same day, when the parents were with plaintiffs, inquiry was again made of Mrs. Kramer, the defendant, and again while standing on the front porch the same representation was made as to the septic tank and its location by pointing toward the front yard and stating it was located there; that plaintiffs executed an agreement to purchase on July 13, 1948, which was followed by the deed of conveyance to them on August 5, 1948 and on October 6, 1948 plaintiffs took possession of the property which was occupied from that time on by them; that in December 1948 or early in July 1949 plaintiffs first experienced trouble with the sewage system servicing the property they bought. It was when the waste water from their home backed up, knee deep, into the cellar; that upon this happening they immediately brought this condition to the attention of defendant and her husband, Joseph Kramer, and the Kramers loaned them an electric pump to remove the waste; that thereafter periodically until about the first of the year 1950 recurrences were experienced by them of backed-up drainage into the cellar. During this period of months plaintiffs were put to

great discomfort, inconvenience and interrupted use of the full facilities of their household because of the cellar flooding and extinguishing the furnace fire; that on a number of occasions, in an attempt to find and correct the difficulty. the services of a sanitation company and also plumbers were engaged by plaintiffs before the true situation was revealed to them by neighbors to the south cutting off a shallow drainage tile over their property from the concrete tank which was located not on plaintiffs' property but on a strip of ground belonging to the defendant lying immediately south of plaintiffs' property. It was when these neighbors cut off or stopped the drainage through these pipes that the nature of the drainage system was revealed to plaintiffs, and on December 10, 1949 a notice was served on plaintiffs to abate the nuisance arising by reason of this general unsanitary condition by the Hamilton County Health Commissioner who ordered them to construct on their property a septic tank and field tile to dispose of the sewage and waste.

The evidence in the case further disclosed that the defendant and her husband lived in the premises for approximately twenty-seven years and up to the time plaintiffs occupied the premises; that in 1921 the underground concrete tank which, as stated, was on a strip of ground belonging to the defendant south of plaintiffs' property, and which was not a septic tank, was built to take the place of another type of tank which was then servicing the property. This was within very close proximity of the house in which defendant was living and the court is of the opinion that defendant well knew of the general location of this tank and this type of sewage system and concealed the true facts from plaintiffs, even though inquiry was made, to induce them to purchase the property.

From the acts of the plaintiffs in their attempt to remedy the condition there can be no question that they were unaware of the type of sewage system on the premises when they bought it, which system was entirely hidden from view by the very nature of its construction and that they were induced to purchase the property relying on the representations of defendant and as a result they suffered damages for which they are entitled to recovery from defendant.

Coming now to consider the damages to which plaintiffs are entitled, the nature of the construction, together with the reticence on the part of the defendant to disclose to plaintiffs the true condition, brings into this action elements of damage in addition to those found generally in cases of this kind.

Counsel for the defendant in their brief contend that plaintiffs can not continue to increase the damages but are put to

the duty of minimizing them, and cite **13 O. Jur., pages 79** and **80**, and **Toledo v. Lewis**, 17 O. C. C. 588 (affirmed in **52 Oh St, 624**). There is no evidence in the instant case to indicate that plaintiffs failed to exercise reasonable care to avoid and minimize the loss. The circumstances were such that plaintiffs only learned of the conditions as they existed by the trial and error method, which course of action finally revealed the true conditions. During this time, while plaintiffs were experiencing these troubles and attempting to overcome them, defendant, with her husband, resided in their residence which was immediately behind plaintiffs' property. She was not only in a position to see what was happening but was actually apprised of the plaintiffs difficulties. Had she frankly revealed the truth to plaintiffs when the trouble first arose in December 1948 or January 1949 much of the loss, expense, damages, inconvenience, hardship, embarrassment and irritation which plaintiffs suffered would have been avoided.

The court reaches the conclusion that the reasonable damage which naturally arose and flowed from defendant's acts, or failure to act, amounted to $1,711.61 and for which plaintiffs are entitled to judgment against the defendant.

An entry may be drawn accordingly.

Separate Finding of Facts.

This cause now coming on for hearing on the motion of the defendant for Separate Finding of Facts, and the Court being fully advised in the premises finds said motion well taken.

In answer to Item 1 of the motion, the following items make up the total damages.

1. Reasonable cost of septic tank _____$822.00
2. Loss of Samuel W. Grau, Jr. of wages _____$150.00
3. Damages to house, foundation, furnace and
   lawn _____$300.00
4. Tile drain and tank investigation repair and
   cleaning out _____$190.00
5. Pumping basement _____$ 49.61
6. Loss of normal use of house, discomfort and
   inconvenience _____$200.00

In answer to the second item of the motion, none of these damages were cumulative after December 10, 1949, which was the date when the County Board of Health notified the plaintiffs to abate the nuisance arising by reason of the improper sewage and waste water disposal.

Item No. 1 of course was subsequent to December 10, 1949.